The Honorable John Paul Capps State Senator 914 James Street Searcy, Arkansas 72143-3927
Dear Senator Capps:
I am writing in response to your request, made on behalf of a Beebe City Council member, for my opinion on the following questions:
 1. Is it the intent and purpose of Act 1372 of 2005 that a nonprofit corporation established under Act 1372 be funded by a levy of a tax (ACA 14-174-101, et seq.)?
 2. May a corporation established under Act 1372 be funded by an appropriation of general funds yearly budget expenditures rather than by a levy of a tax authorized by the voters as provided for in ACA 14-174-103? Would this be in violation of Ark. Const. art. 12, sec. 5?
 3. Is it your opinion that a lawsuit could be successfully brought against a municipality that funded a corporation established under authority of Act 1372 of 2005 with money from the General Fund yearly budget appropriation rather than from a levy of a tax as prescribed and authorized by the voters under Act 1372?
RESPONSE
With respect to your first question, I believe the legislature clearly intended that a public economic development corporation of the sort authorized by Act 1372 of 2005 be funded by a levy of a tax. Specifically, A.C.A. § 14-175-111(b)(1)(A) (Supp. 2005) expressly authorizes levying a voter-approved sales and use tax to finance projects undertaken by such a corporation. With respect to your second question, the law is unclear as to whether or not a political subdivision might appropriate unpledged general funds to subsidize a public corporation formed under the Public Corporations for Economic Development Act (the "PCEDA"), which was enacted as Act 1372, § 3 and is codified at A.C.A. §§14-175-101 through -116 (Supp. 2005). As a general rule, in the absence of prohibitory legislation, a political subdivision may pledge public funds, including general revenues, to a public entity to fulfill a "public purpose." Unfortunately, it remains unclear whether the legislature intended the financing mechanism set forth in the PCEDA to be exclusive, primary or optional. Legislative clarification appears warranted. I do not believe the fact that a political subdivision provided such alternative funding would offend Ark. Const. art. 12, § 5. As noted, I believe the issue is one of statutory preemption. With respect to your third question, given my response to your second question, I cannot confidently predict the outcome of a lawsuit challenging the funding of a PCEDA project using general funds.
Before addressing your specific questions in detail, I will summarize the substance of Act 1372 (the "Act"). Sections 1 and 2 of the Act amend several provisions of the Economic Development Tax Act (the "EDTA"), A.C.A. §§ 14-174-101 through -109 (Repl. 1998 Supp. 2005), initially enacted pursuant to identical Acts 1993, Nos. 1012 and 1069, which generally authorizes cities and counties to levy taxes to fund economic development projects and to support the creation of jobs in the private sector. Section 3 of the Act enacts the PCEDA as a new chapter of the Arkansas Code that provides for the formation of public corporations to stimulate economic development at the local level. The EDTA as amended provides that "[t]he sales and use taxes levied or authorized under this subchapter may be used for the sole use and benefit of a corporation organized under" the PCEDA. A.C.A. § 14-174-109(a).
The legislature's intent in enacting the PCEDA is set forth at A.C.A. §14-175-102, which provides:
 It is the intent of the General Assembly by the enactment of this chapter to authorize in each municipality and county in this state the incorporation of a public corporation as a political subdivision of the state for the purpose of securing and developing industry and fostering economic development and to invest the corporation with all powers that may be necessary to enable it to accomplish those purposes.
Subsection 14-175-104(b)(1) of the Arkansas Code provides:
 All acts and activities of the public corporation performed under the authority of this chapter are legislatively determined and declared to be essential governmental functions.
The PCEDA's goal is to promote the creation of "primary jobs," which the Code defines as follows:
 "Primary job" means a job that is available or expected to become available at an enterprise:
 (A) For which a majority of the products or services of that enterprise are ultimately used in regional, statewide, national, or international markets infusing new dollars into the local economy; and
 (B) Which enterprise derives less than ten percent (10%) of its total Arkansas revenue from sales to the general public[.]
A.C.A. § 14-175-103(8).
The Code further sets forth the following broad definition of the term "enterprise" as used in the statute just quoted:
 "Enterprise" means any for-profit or nonprofit corporation, partnership, sole proprietorship, firm, franchise, association, organization, trust, or any other form of legal entity[.]
A.C.A. § 14-175-103(5).
Subject to the ultimate "control of the local government under whose auspices the corporation was created," A.C.A. § 14-175-111(b)(2)(B), a public corporation formed under the PCEDA is authorized to undertake any "project" as thus defined:
 (A) "Project" means an undertaking related to the creation or retention of primary jobs.
(B) A project may include one (1) or more of the following:
 (i) The acquisition and disposition of land, buildings, equipment, facilities, related infrastructure, and improvements necessary to:
 (a) Attract, promote, or develop new or expanded enterprises that will create or retain primary jobs in the future; or
 (b) Provide job training and postsecondary education required or suitable for the creation or retention of primary jobs;
 (ii) The construction or expansion of buildings, facilities, related infrastructure, and improvements necessary to attract, promote, or develop new or expanded enterprises that will create or retain primary jobs in the future or to provide job training and postsecondary education required or suitable for the creation or retention of primary jobs;
 (iii) Job training required or suitable for the creation or retention of primary jobs;
 (iv) Postsecondary education required or suitable to educate students in fields of study needed by enterprises providing primary jobs; and
 (v) Expenditures found by the corporation to be required or suitable for infrastructure necessary to attract, promote, or develop new or expanded enterprises, limited to:
(a) Streets and roads;
(b) Parking;
(c) Rail spurs;
(d) Water and electric utilities;
(e) Gas utilities;
(f) Drainage and related improvements;
(g) Telecommunications;
(h) Data communications; and
(i) Internet improvements[.]
A.C.A. § 14-175-103(9).
With respect to the financing of "projects" as defined above, A.C.A. §14-175-111(b)(1)(A) authorizes a public corporation formed pursuant to the PCEDA "[t]o receive sales and use taxes levied pursuant to the Economic Development Tax Act, § 14-174-101 et seq., from the local government or governments under whose authority the corporation was created[.]"[1]
The EDTA provides as follows regarding the referenced taxes:
 In addition to all other authority of local governments to levy taxes provided by law, any county, acting through its quorum court, or any municipality, acting through its governing body, may levy any tax. However, no ordinance levying any tax authorized by this subchapter shall be valid until adopted at a special or general election by qualified electors of the city or in the county where the tax is to be imposed, as the case may be. An election will also be required to increase, decrease, or repeal a tax levied pursuant to this subchapter.
A.C.A. § 14-174-103. This statute's reference to "any tax" is broader than the reference in the PCEDA to "sales and use taxes." However, as reflected in the following excerpt from A.C.A. § 14-174-104, the legislature may have intended that the tax authorized under the EDTA be a sales and use tax:
 (a) The local government may levy a sales or use tax pursuant to any other currently existing statutory authority to levy the tax and provide that the proceeds generated by the tax are to be used for any purpose authorized by this subchapter.
Question 1: Is it the intent and purpose of Act 1372 of 2005 that anonprofit corporation established under Act 1372 be funded by a levy of atax (ACA 14-174-101, et seq.)?
In my opinion, the answer to this question is "yes."
I should note at the outset that your reference to "a nonprofit corporation" is inaccurate insofar as any corporation of the sort authorized by Act 1372 is expressly identified in the Arkansas Code as a "public corporation" comprising a "political subdivision" of the state. A.C.A. § 14-175-102. The term "nonprofit corporation" generally denotes a private entity — a description that would not apply to a corporation formed under the Act.
In offering this conclusion, I am not ignoring the fact that the PCEDA at various points describes a corporation formed under the Act by reference to the Arkansas Nonprofit Corporation Act of 1993, A.C.A. §§ 4-33-101
through -1707 (Repl. 2001 Supp. 2005). Subsection 14-175-107(a)(3) of the Code provides that the articles of a corporation formed under the PCEDA shall set forth "[a]ny other matters relating to the corporation required by the Arkansas Nonprofit Corporation Act of 1993 . . . which are not inconsistent with this chapter or with the laws of this state." Subsection 14-175-108(b)(1) further requires that the articles of incorporation and the municipal or county resolution authorizing the incorporation, see A.C.A. § 14-175-107(b)(1), "be filed in the location or locations required by the Arkansas Nonprofit Corporation Act of 1993. . . ." Subsection 14-175-111(a) accords a public corporation formed under the PCEDA "all of the rights, powers privileges, authority, and functions given by the general laws of this state to nonprofit corporations incorporated under the Arkansas Nonprofit Corporation Act of 1993. . . ." And finally, A.C.A. § 14-175-116 provides:
 (a) Each corporation is subject to the provisions of the Arkansas Nonprofit Corporation Act of 1993, § 4-33-101 et seq., to the extent that those provisions are not in conflict with the provisions of this chapter.
 (b) If a provision of the Arkansas Nonprofit Corporation Act of 1993, § 4-33-101 et seq., is in conflict with any provision of this chapter, the provisions of this chapter shall control.
However, notwithstanding the fact that a corporation formed under the PCEDA may be governed, in part, by legislation also applicable to private, nonprofit corporations, the fact remains that the legislature has expressly identified PCEDA corporations as "public" to the point of themselves constituting "political subdivisions" of the state performing "essential governmental functions." A.C.A. §§ 14-175-102 and 104(b)(1). Given these characterizations, I believe it would be inappropriate to equate a PCEDA corporation with a private, nonprofit entity of the sort governed exclusively by the Arkansas Nonprofit Corporation Act of 1993.
In response to your specific question, I believe the legislature clearly intended Act 1372 to authorize funding any project under the PCEDA through a voter-approved levy of a sales and use tax. A.C.A. §§14-175-111(b)(1)(A) and 14-174-103 and -104. However, as reflected in your second question, the issue remains whether the legislature intended such sales and use taxes to be the exclusive source of revenues to finance a PCEDA project.
Question 2: May a corporation established under Act 1372 be funded by anappropriation of general funds yearly budget expenditures rather than by alevy of a tax authorized by the voters as provided for in ACA 14-174-103?Would this be in violation of Ark. Const. art. 12, sec. 5?
Although the Arkansas Code does not expressly authorize expending general funds on PCEDA projects, it likewise does not expressly prohibit doing so. At issue is whether the legislature intended to restrict cities and counties to financing economic development under the PCEDA only through the sales and use taxes referenced at A.C.A. §§ 14-175-111(b)(1)(A) or, alternatively, whether it merely intended to acknowledge that, in addition to any other available source of city or county financing, certain voter-approved sales and use tax revenues could be pledged exclusively to PCEDA projects. As noted in my factual recitation, the PCEDA empowers a public corporation formed under the Act to receive sales and use taxes levied under the EDTA. Id. Subsection 14-175-112(a) of the Code provides that all proceeds received by a public corporation under the EDTA must be devoted to a "project" as defined in the PCEDA.[2]
Left unaddressed in the legislation is whether the public corporation might further receive city or county funds that are not pledged to some other purpose.
In my opinion, the pertinent question is whether the legislature intended the financing provision in the PCEDA to preempt any alternative mode of financing that might otherwise be available to political subdivisions. The state may preempt any local legislative authority by regulating an area completely so as not to leave reasonable room for local regulation.Kollmeyer v. Greer, 267 Ark. 632, 593 S.W.2d 29 (1980). The court inKollmeyer noted that the "General Assembly should be clear when it intends to pre-empt a field that otherwise could be validly regulated by . . . ordinance[.]" Id. at 637. The court further stated:
 The situation is comparable to the federal doctrine of preemption that is utilized in reconciling federal law with any state law that seeks to regulate the same subject matter. As noted by the United States Supreme Court in Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), one must inquire if" the federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplant it."
Id. at 636-37.
As previously noted, among the powers expressly accorded a PCEDA public corporation is the authority "[t]o receive sales and use taxes levied pursuant to" the EDTA. A.C.A. § 14-174-111(b)(1)(A). The Code contains no similar provision authorizing a PCEDA public corporation to receive general revenues from the public corporation that authorized its incorporation. The legislature's silence on this question could be interpreted in one of two ways. First, one might apply the following principle of statutory construction:
 The phrase expressio unius est exclusio alterius is a fundamental principle of statutory construction that the express designation of one thing may properly be construed to mean the exclusion of another. Chem-Ash, Inc. v. Arkansas Power Light Co., 296 Ark. 83, 751 S.W.2d 353 (1988); Venhaus v. Hale, 281 Ark. 390, 663 S.W.2d 930
(1946)."
Gazaway v. Greene County Equalization Board, 314 Ark. 569, 575,864 S.W.2d 233 (1993). One could argue that this principle dictates that the PCEDA's exclusive reference to a voter-approved sales and use tax as a financing mechanism for a public corporation forecloses using any other source of financing.
On the other hand, one holding a different view of the matter might rely on the paramount rule of statutory construction — namely, that a court must always interpret a statute in accordance with the legislature's intent. Flowers v. Norris, 347 Ark. 760, 765, 68 S.W.3d 289, 292 (2002) ("It is . . . axiomatic that in statutory interpretation matters, we are first and foremost concerned with ascertaining the intent of the General Assembly.") (citing State v. Havens, 337 Ark. 161, 987 S.W.2d 686
(1999)). In considering the issue of preemption, I am struck by the fact that the Code expressly defines economic development of the sort authorized in the PCEDA as involving "essential government functions." A.C.A. § 14-175-104(b)(1). Although the PCEDA authorizes financing those government functions through a sales and use tax, A.C.A. §§ 114-175-111(b)(1)(A), no provision of the Act earmarks such tax revenues as the exclusive source for funding such essential government activities. In my opinion, a court might well consider it unreasonable to conclude that the legislature, in making available a new revenue source to finance such activities, intended to foreclose financing them through a separate revenue source that would otherwise have been available. It seems to me consistent with the spirit of the PCEDA to conclude that a city or county may devote to the activities authorized therein any revenues not expressly pledged to another purpose. This conclusion might be bolstered both by the fact that a legislative intention to preempt a field should be clearly stated, Kollmeyer, 267 Ark. at 637, and by the legislature's declaration in the PCEDA itself that "[t]his chapter shall be liberally construed. . . ." A.C.A. § 14-175-104(a). However, legislative clarification on this issue appears warranted.
With respect to the second part of your question, I do not believe a conclusion that general funds are available to finance PCEDA projects would in any way be affected by the terms of Ark. Const. art. 12, § 5, which provides in pertinent part: "No county, city, town or other municipal corporation shall . . . appropriate money for, or loan its credit to, any corporation, association, institution or individual." Because of its broad proscription against grants or loans "to any corporation, association, institution, or individual," Article 12, § 5 might appear to bar any and all donations to any entity or person, including a public corporation of the sort at issue here, regardless of how exalted its purpose. However, as discussed in the attached Ark. Op. Att'y Gen. No. 2005-205, the Arkansas Supreme Court has clearly held that certain public and quasi-public corporations fall outside the proscription set forth in Article 12, § 5. In Opinion No. 2005-205, I offered the following analysis:
 [I]n McCutchen v. Huckabee, 328 Ark. 202, 943 S.W.2d 225 (1997), the supreme court entertained an article 12, § 5 challenge to legislation that had appropriated $20 million for a multipurpose civic center in Pulaski County. The quorum court enacted an ordinance creating a Multi-Purpose Civic Center Facility Board to oversee construction and eventually take ownership of the facility. The appellants objected to the use of public funds for this purpose. Invoking City of Paris [v. Street Improvement District No. 12, 206 Ark. 926, 175 S.W.2d 199
(1943)], which had rejected a similar challenge to public funding of an improvement district, the Court concluded that "facilities boards are not the type of company, association, or corporation contemplated by Article 12, Section 5." 382 Ark. at 213. Consequently, notwithstanding the judicial tightening of the rule restricting the use of public funds, there apparently remains a category of quasi-public entity that can properly be awarded such funds.
I further quoted the following summary of the law offered by one of my predecessors in Opinion No. 1999-408:
 [A]ny use of county moneys for charitable purposes may well pass constitutional muster if the use serves a public purpose or achieves a governmental function, so long as the recipient can be characterized as "public". . . . As the law currently stands, there appears to be some element of fiat in the Supreme Court's pronouncements regarding what pledges of municipal or county funds will be permitted. As established in McCutchen, it is clearly permissible, for instance, to contribute to a facilities board, which, despite not being a straightforward municipal agency, has a statutory pedigree and has been identified as a category of entity beyond the contemplation of article 12, § 5. . . . Perhaps the most that can be said is that if an entity is authorized by statute and is not organized as a private nonprofit corporation, and especially if the donations themselves are authorized by statute, a donation of county or municipal funds may be constitutional.
Id. at 9 (emphasis added).
Applying the principles just quoted, I will opine that a "public corporation" and "political subdivision" of the sort authorized in the PCEDA, A.C.A. § 14-175-102 — one charged with performing what the legislature has classified as "essential government functions," A.C.A. §14-175-104(b)(1) — is not a "corporation" of the sort referenced in Article 12, § 5. Consequently, I do not believe such a public corporation would be constitutionally barred from receiving unpledged revenues from the political subdivision it serves.
Question 3: Is it your opinion that a lawsuit could be successfullybrought against a municipality that funded a corporation establishedunder authority of Act 1372 of 2005 with money from the General Fundyearly budget appropriation rather than from a levy of a tax asprescribed and authorized by the voters under Act 1372?
As reflected in the above discussion, I cannot definitively answer this question until either the legislature or the judiciary clarifies the state of the law.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
[1] With respect to development projects undertaken pursuant to the EDTA, as distinct from the PCEDA, A.C.A. § 14-174-107 provides that a city or municipality may, but not necessarily must, use tax revenues to contract with "a community-based not-for-profit economic development corporation" like "a chamber of commerce, industrial development corporation, or similar corporation" for the purpose of securing "professional economic and industrial development management expertise." By contrast, as noted in my response to your first question, infra, the PCEDA contemplates that the tax proceeds go to a public, not a private nonprofit, corporation. See A.C.A. § 14-175-102.
[2] By comparison, the EDTA independently authorizes a city or county to levy a sales or use tax, subject to voter approval, A.C.A. §14-174-103, to facilitate "the establishment and operation of local economic development programs," A.C.A. § 14-174-105.